|  |  |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>SONYA F. LEVY, on behalf of herself and all others similarly situated,<br><br>                                Plaintiff,<br><br>    -against-<br><br>HU PRODUCTS LLC, HU MASTER HOLDINGS LLC, and MONDELEZ GLOBAL LLC,<br><br>                                Defendants. | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #: _____<br>DATE FILED: __3/1/2024__<br><br>23 Civ. 1381 (AT)<br><br>**<u>ORDER</u>** |

ANALISA TORRES, District Judge:

    Plaintiff, Sonya F. Levy, brings this putative class action against Defendants Hu Products LLC, Hu Master Holdings LLC, and Mondelez Global LLC (collectively, "Hu"), alleging that Defendants deceptively marketed their dark chocolate bars as "clean" and "simple" when they in fact contained significant amounts of lead. Levy alleges (1) breach of express warranty; (2) fraud; and (3) violations of New York General Business Law §§ 349 and 350. *See* Proposed Amended Complaint ("PAC"), ECF No. 51-1.[1]

    Defendants move to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and (b)(6). Def. Mot., ECF No. 42; Def. Mem., ECF No. 43. For the following reasons, the motion is DENIED.

## **BACKGROUND**[2]

    Hu manufactures, markets, advertises, and distributes a line of "Organic Simple Dark Chocolate 70% Cocoa chocolate bars" in eleven flavors including "Simple," "Salty," "Cashew Butter

---

[1] "For the purpose of procedural efficiency," the Court will "treat the proposed amended complaint as the operative pleading and construe [Hu's] motion to dismiss as addressed to the amended complaint." *Conforti v. Sunbelt Rentals, Inc.*, 201 F. Supp. 3d 278, 285 (E.D.N.Y. 2016); *see Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 303–04 (2d Cir. 2020).

[2] The following facts are taken from the complaint, which the Court accepts as true for purpose of this motion. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

+ Pure Vanilla Bean," and "Almond Butter + Puffed Quinoa" (the "Products"). PAC ¶¶ 1, 23. Hu targets "discerning," "health focused" consumers. *Id.* at 15 ¶ 58.[3] Its packaging for the "Simple" 70% cacao bar, for example, lists only three ingredients: "organic fair-trade cacao, unrefined organic coconut sugar, organic fair-trade cocoa butter." *Id.* ¶¶ 60–61. On its website, Hu purports to "obsessively vet every ingredient," "replacing weird, industrial ingredients with simple, healthier ones." *Id.* at 17 ¶ 58. The website includes Hu's tagline: "NO WEIRD INGREDIENTS. EVER." *Id.* ¶¶ 60, 63.



*Id.* ¶¶ 62–63.

In December 2022, testing by Consumer Reports revealed traces of lead and cadmium in dark chocolate bars from a variety of brands, including the Products. *Id.* ¶¶ 35–37. Researchers purchased dark chocolate bars from 21 brands between "April and May 2022 from online and stores in the New York area," and tested "2-3 samples with at least two distinct lot codes of each model." ECF No. 44-5 at 2. The study found that Hu's "Organic Simple Dark Chocolate 70% Cacao" bar contained more

---

[3] The PAC has two sets of paragraphs numbered 52 to 58, so for those paragraphs, the Court includes a page number prior to the paragraph number for identification purposes.

than double the maximum allowable dose level ("MADL") of lead under California's Proposition 65. *See id.*; Kevin Loria, *Lead and Cadmium Could Be in Your Dark Chocolate*, Consumer Reports (Dec. 15, 2022).[4] The publication noted that although "lead is both common and naturally occurring, 'it is not inevitable'" and can be minimized by taking certain measures during the cacao harvesting and manufacturing processes. PAC ¶ 33. Lead exposure can cause a range of adverse effects including "neuropathy, brain damage, hypertension, decreased renal function, increased blood pressure, gastrointestinal and cardiovascular effects, reduced fetal growth, and lower birth weights in pregnant women." *Id.* ¶ 30.

Levy is a New York resident who purchased and consumed the Products "multiple times" in September 2022. *Id.* ¶ 16. She alleges that she "purchased the Products in reliance on Defendants' representations that the Products contained only the dark chocolate ingredients that were "simple" and "clean" and safe for consumption." *Id.* ¶ 17. Had Defendants disclosed that the Products contained lead, Levy alleges, she "would not have paid the same amount for the Products and/or would not have been willing to purchase" them. *Id.* ¶ 18.

Levy filed this action on February 17, 2023, and amended her complaint on July 3, 2023. ECF Nos. 1, 40. Levy moved for leave to amend her complaint a second time, ECF No. 51, and Hu moved to dismiss the complaint, ECF No. 42. *See supra* n.1.

## DISCUSSION

I.  Judicial Notice

As an initial matter, Hu asks the Court to take judicial notice of thirteen documents in support of its motion to dismiss. Notice Mot., ECF No. 45.

---

[4] In deciding the instant motion, the Court considers the Consumer Reports article, which the complaint incorporates by reference and which Levy knew about and relied upon in bringing the suit. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002); PAC ¶ 6 n.5.

Under Federal Rule of Evidence 201, a court may take judicial notice of any fact that is "not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." "Under Rule 201(b)(2), courts may take judicial notice of publicly available documents such as regulatory filings." *Lewis v. M&T Bank*, No. 21-933, 2022 WL 775758, at *1 (2d Cir. Mar. 15, 2022). "But they must do so to determine what statements the documents contained . . . and not for the truth of the matters asserted in the documents." *Id.* (cleaned up); *accord Porrazzo v. Bumble Bee Foods, LLC*, 822 F. Supp. 2d 406, 412 (S.D.N.Y. 2011).

Three of the documents—Exhibits 1, 3, and 5 to Hu's motion—are quoted and cited in the PAC. The Court, therefore, takes judicial notice of these documents, which are incorporated by reference and which Levy knew about and relied upon in bringing the suit. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002); PAC ¶¶ 4 & n.3, 6 & n.5.

Exhibits 2, 4, 7, 8, 9, 10, 11, and 12 are "documents available on the websites of the U.S. Food and Drug Administration [(the "FDA")], [the] New York State Department of Health, the California Attorney General's Office, and the Federal Register." Notice Mot. at 4. These documents are publicly posted on government websites, and can be judicially noticed because their accuracy cannot reasonably be questioned. *See Becker v. Cephalon, Inc.*, No. 14 Civ. 3864, 2015 WL 5472311, at *3 (S.D.N.Y. Sept. 15, 2015) (collecting cases taking judicial notice of FDA documents). Levy argues, however, that Hu's use of these documents is inadmissible hearsay that cannot be used to prove, for example, that the amount of lead in the Products would not pose a significant health risk. ECF No. 48 at 4–5; *see, e.g.*, Def. Mem. at 2–3, 10, 14 (citing FDA guidance and opinions). The Court agrees. Although the Court takes judicial notice of these documents, it does so "only to determine what the documents state[]"—not to accept "the truth of their contents." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

4

Exhibits 6 and 13 are a consent judgment entered in California state court and an order entered in New Jersey state court. "[C]ourts routinely take judicial notice of documents filed in other courts, again not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Id.* The Court will likewise take judicial notice of these documents, but not for the truth of the matters asserted therein.

II. Rule 12(b)(1)

A. Legal Standard

Under Rule 12(b)(1), a district court must dismiss a complaint if the plaintiff has not established standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). "At the pleading stage, Plaintiffs have the burden of alleging facts that affirmatively and plausibly suggest that they have standing to sue." *Amadei v. Nielsen*, 348 F. Supp. 3d 145, 154 (E.D.N.Y. 2018) (cleaned up) (citing *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016)). A plaintiff has standing if she has pleaded a case or controversy in which she has a personal stake in the outcome. *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l*, 790 F.3d 411, 417 (2d Cir. 2015). For a plaintiff to have standing to bring a lawsuit under Article III of the United States Constitution, "(1) the plaintiff must have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (citation omitted). The injury in fact must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks and citations omitted). An injury is particularized if it "affect[s] the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560 n.1). A concrete injury must be "'de facto'; that is, it must actually exist." *Id.* at 340.

Because standing is challenged here on the basis of the pleadings, [the Court] therefore accept[s] as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Carver v. City of New York*, 621 F.3d 221, 225 (2d Cir. 2010) (cleaned up).

### B. Standing

First, Hu argues that Levy has not shown an injury-in-fact because she has not plausibly alleged that "*she* purchased any Hu 70% bars containing allegedly 'unsafe levels' of lead." Def. Mem. at 11. Hu contends that that Levy did not personally test any of the chocolate bars that she purchased, and that the Consumer Reports study does not establish that "that every single Hu 70% bar sold in the United States" contained unsafe levels of lead. *Id.* at 8. Consequently, Hu argues, Levy has not alleged that she actually consumed a bar containing an unsafe amount of lead.

Hu misstates the plaintiff's burden on a motion to dismiss. At this stage, the Court must "draw from the pleadings all reasonable inferences in the plaintiff's favor and . . . presume that general allegations embrace those specific facts that are necessary to support the claim.'" *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 737 (2d Cir. 2017) (cleaned up). In *John*, for example, the plaintiff alleged that (1) a third-party study had found that Whole Foods' New York City stores "routinely overstated the weights of its pre-packaged products," and (2) he "routinely" purchased such pre-packaged products from the relevant Whole Foods stores during that time period. *Id.* at 734–35. The Second Circuit held that these allegations were sufficient to confer standing, overturning the district court's decision to the contrary. *Id.* at 738. As the Circuit explained, "[a]t the pleading stage, [the plaintiff] need not prove the accuracy of the [third party's] findings or the rigor of its methodology; he need only generally allege facts that, accepted as true, make his alleged injury plausible." *Id.* at 737.

*John'*s reasoning applies here, where Levy has alleged that (1) a third-party study, testing "2-3 samples with at least two distinct lot codes of each model," detected lead in the Products, and (2) she

purchased the Products "almost on a weekly basis" from New York stores in the relevant time period. ECF No. 44-5 (methodology); PAC ¶ 16. It is true that Levy does not allege the Products she purchased were produced in the same batch as those tested by *Consumer Reports*. "Yet, even in the absence of linkage to a particular batch or lot, it is reasonable to assume that the same product line would involve the same manufacturing process and with the same likelihood of residual [lead] contamination even if not every batch is contaminated." *Clinger v. Edgewell Pers. Care Brands, LLC*, No. 21 Civ. 040, 2023 WL 2477499, at *4 (D. Conn. Mar. 13, 2023).

Hu contends that the study conducted in *John* involved a larger sample than the Consumer Reports survey. Def. Reply at 4–5, ECF No. 49. At this stage, however, the Court declines to delve into the scientific validity of the study, which Hu will have ample opportunity to challenge at summary judgment and trial.[5] Drawing all inferences in Levy's favor, the PAC permits the reasonable inference that Levy purchased at least one Product containing lead.

Hu also contends that even if Levy has alleged that she purchased Products containing lead, she has not established that the amount of lead in the Products was "unsafe." Def. Mem. at 13–14. Hu argues that Levy cannot rely on California's MADL regulations to establish that the alleged level of lead was "unsafe" because the regulations have been superseded by a 2018 consent judgment, which set a higher threshold. *Id.* at 14. But, "[w]hat constitutes an 'unsafe level' of lead . . . is a question of fact not appropriately resolved on a motion to dismiss." *Rodriguez v. Mondelez Glob. LLC*, No. 23 Civ. 00057, 2023 WL 8115773, at *5 (S.D. Cal. Nov. 22, 2023). Here, as in *Rodriguez*, Levy has alleged that "[n]o amount of lead is known to be safe." PAC ¶ 32; *see id.* at *6. The veracity of that claim is better tested on summary judgment or at trial than on a motion to dismiss.

---

[5] *Onaka v. Shiseido Americas Corp.*, No. 21 Civ. 10665, 2023 WL 2663877, at *5 (S.D.N.Y. Mar. 28, 2023), which Hu cites, is not to the contrary. There, the court found that plaintiffs lacked standing to pursue a class action based on the presence of PFAS—"forever chemicals"—in cosmetics. But in that case, "[n]otably, the Complaint [did] not allege that any of its sources show that Defendant's cosmetics contain PFAS." *Id.* at *5. Here, the Consumer Reports study specifically identified the Products as containing lead.

7

Finally, Hu argues that Levy lacks standing because she has not alleged that the Products actually "harmed her"—only that she "lost money" by purchasing an item she would not have purchased, had she known it contained lead. Def. Mem. at 13. Hu does not dispute that, "[f]or standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'" *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464 (2017). Instead, Hu contends that Levy did not lose money because she "received exactly what she intended to purchase: tasty chocolate that is safe to eat." Def. Reply at 1. Hu notes that Levy "does not claim the chocolate was stale or unsatisfying"; "[t]o the contrary, [she] alleges that she purchased it repeatedly and that she would buy it again." Def. Mem. at 13. (Hu acknowledges, however, that Levy has at least one issue with the chocolate: "that it supposedly contains lead." *Id.*)

Hu's arguments miss the point. The Circuit has explained that "[o]ne method of demonstrating actual injury in the consumable goods context is by showing that the plaintiff paid a 'price premium'—that is, as a result of the defendant's deception, the plaintiff paid more for a product than he otherwise would have." *Eidelman v. Sun Prods. Corp.*, No. 21-1046, 2022 WL 1929250, at *1 (2d Cir. June 6, 2022). Levy's allegations fit this theory: she alleges that she "paid more for the Products than [she] would have had [she] known the truth about the Products." PAC ¶ 73. She also alleges that that the Products are part of "a line of 'premium' snacks and chocolate products" marketed to high-end consumers who are interested in their "clean" and "simple" ingredients. *Id.* ¶¶ 17, 21. These allegations permit the inference "that the [Products] sell[] for a higher price than a comparable product because of [their] use of the deceptive claim." *Eidelman*, 2022 WL 1929250, at *1. The Court, therefore, finds that Levy has sufficiently alleged an injury in fact based on her payment of a premium price for the Products.

Accordingly, Hu's motion to dismiss for lack of subject matter jurisdiction is DENIED.[6]

III.  Rule 12(b)(6)

    A. Legal Standards

To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A plaintiff is not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions." *Twombly*, 550 U.S. at 555.  The court must accept the allegations in the complaint as true and draw all reasonable inferences in the non-movant's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

To state a claim for a violation of New York General Business Law §§ 349 or 350, a plaintiff must allege that a defendant engaged in consumer-oriented conduct that was materially misleading and that the plaintiff suffered an injury as a result. *See Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015); *Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 802 (S.D.N.Y. 2021).  A plaintiff must also show that the allegedly misleading practice is likely to mislead a reasonable consumer. *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013); *Barreto*, 518 F. Supp. 3d at 802.  For causes of action based on an alleged omission, moreover, the plaintiff must show "either that the business alone possessed the relevant information, or that a consumer could not reasonably obtain the information." *Kyszenia v. Ricoh USA, Inc.*, 583 F. Supp. 3d 350, 360 (E.D.N.Y. 2022).

A claim for breach of an express warranty requires a plaintiff to allege that the defendant made an affirmation of fact or promise which was false or misleading when made and which had a natural tendency to induce a buyer to purchase the offending product, and that the plaintiff relied on

---

[6] To the extent Hu makes the same arguments in support of its motion to dismiss for failure to state a claim, that motion is DENIED for the same reasons. *See* Def. Mem. at 7.

the express warranty to her detriment. *See DiBartolo v. Abbott Lab'ys*, 914 F. Supp. 2d 601, 625 (S.D.N.Y. 2012). If a claim for breach of an express warranty is premised on the assertion that a defendant's labeling is materially misleading, a plaintiff must also allege that the labeling "would be likely to deceive or mislead a reasonable consumer." *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 165 (S.D.N.Y. 2021). A plaintiff must point to a specific, express statement that is false or misleading and that a reasonable consumer can interpret as a material claim about the product. *Twohig*, 519 F. Supp. 3d at 167 (citations omitted); *see also Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014) (collecting cases).

B. Violations of New York General Business Law Sections 349 and 350

Levy alleges that Hu has misled consumers in at least two ways: by omission, in "fail[ing] to disclose that the Products contained or risked containing lead," and by misrepresentation, in stating (among other things) that the Products are "simple." PAC ¶¶ 70, 92–93, 122. She also alleges that she and others "relied on [Hu's] misrepresentations and omissions that the Products contained high-quality, safe dark chocolate ingredients, and the lowest possible amount of lead, when purchasing the Products." *Id.* ¶ 13.

1. Omission

First, Hu argues that Levy has not pleaded an "actual omission because nothing in the [PAC] alleges why a reasonable consumer would have been led to believe that dark chocolate would always be a lead-free product." Def. Mem. at 15. Hu notes that the FDA has concluded that "it is not possible to prevent or remove lead entirely from foods." *Id.* at 16. And, it contends that "the level of lead allegedly detected in the Product falls well below . . . a level the FDA concluded 'would not pose a significant risk' even if 'consumed frequently by small children.'" *Id.* at 16. As explained *supra*, however, the Court cannot consider the FDA statements for the truth of the matters asserted. The amount of lead that is "safe" to consume will be, as Levy puts it, "a hotly contested issue of fact" for

summary judgment: Levy alleges that there is no amount of lead that is safe, and that consumers "choose dark chocolate in particular for its potential health benefits." Pl. Opp. at 17, ECF No. 47; PAC ¶ 38.  At this stage, the Court declines to find that the reasonable consumer would not assume that dark chocolate was lead-free.

Levy alleges, moreover, that the lead content of dark chocolate "is important to consumers and likely to affect their choice of product," rendering the omission "material."  *Braynina v. TJX Companies, Inc.*, No. 15 Civ. 5897, 2016 WL 5374134, at *5 (S.D.N.Y. Sept. 26, 2016); *see, e.g.*, PAC ¶¶ 64–69.  The question, therefore, is whether Levy has alleged that the actual or potential presence of lead in the Products was in Hu's possession alone "or that a consumer could not reasonably obtain the information."  *Kyszenia*, 583 F. Supp. 3d at 360.

Hu argues that Levy's claims fail this requirement because the FDA and other third parties raised alarm bells about lead in chocolate as early as 2006.  Def. Mem. at 18–19.  Hu cites *Paradowski v. Champion Petfoods USA, Inc.*, in which the Second Circuit determined—on summary judgment—that "the public has been aware of the occurrence (or the risk)" of dog foods containing heavy metals "for some time."  No. 22-962, 2023 WL 3829559, at *3 (2d Cir. June 6, 2023).  In that case, however, the Circuit had the benefit of a developed "factual record establish[ing] that a reasonable consumer could have discovered that Champion's pet foods had a material risk of containing some measurable amount of heavy metals."  *Id.*  Here, examining only the materials properly considered on a motion to dismiss, the Court finds that Levy has alleged that a consumer could not reasonably determine how much lead the Products contained, as "detecting these chemicals requires expensive scientific testing."  PAC ¶ 39; *see Clinger*, 2023 WL 2477499, at *16 ("Testing is prohibitively expensive, and impractical at the point of purchase. It is certainly plausible that consumers lack the ability to test or independently ascertain whether their own bottles of sunscreen contain benzene.").

11

2. Misrepresentation

Next, Hu argues that Levy has not alleged any misrepresentations that would be likely to mislead a reasonable consumer. Def. Mem. at 19–20. Levy argues that the "marketing and advertising for the Products describes them as having three 'organic,' 'simple,' 'clean,' 'healthier' . . . , [and] safe for consumption 'dark chocolate ingredients,'" and no "weird ingredients." Pl. Opp. at 15. Many of these statements, however, appear only on Hu's website, which Levy does not allege that she viewed or relied upon when purchasing the Products. PAC ¶ 57; *see Troncoso v. TGI Friday's Inc.*, No. 19 Civ. 2735, 2020 WL 3051020, at *8 n.7 (S.D.N.Y. June 8, 2020) (dismissing claims based on alleged website misrepresentation where "Plaintiff does not allege that she viewed TGIF's Amazon web page before deciding to purchase the snack chips, or that she relied on that statement when purchasing the snack chips"). The Court, therefore, examines only those representations made on the Products' packaging.

Levy claims that at least three elements of Hu's packaging are misleading: (1) the name of the "Simple" 70% dark chocolate bar; (2) the ingredient list, which does not contain lead; and (3) "the long list of undesired items that the Product boastfully does not contain," including refined sugar, dairy, and soy. *See* PAC ¶¶ 60–62. Hu argues that the word "simple" is "classic puffery," and that the list of items the Product does not contain cannot mislead consumers as to what it does contain. Def. Mem. at 20–22.

"Courts view each allegedly misleading statement in light of its context on the product label or advertisement as a whole." *Troncoso*, 2020 WL 3051020, at *6 (citation omitted). Taking the labels as a whole—and "mindful that courts should ordinarily refrain from resolving questions of reasonableness on a motion to dismiss," *George v. Starbucks Corp.*, 857 F. App'x 705, 706–07 (2d Cir. 2021)—the Court finds that Levy has plausibly alleged that a reasonable consumer could be

12

misled into believing the Products do not contain unsafe amounts of lead (or, indeed, any lead at all). *See Rodriguez*, 2023 WL 8115773, at *11–12 (examining Hu's labels and finding same).

On the word "simple," Hu cites an Arizona district court case finding that the descriptor was non-actionable puffery when used to describe online classroom technology. Def. Mem. at 20 (citing *Lomingkit v. Apollo Ed. Grp. Inc.*, 275 F. Supp. 3d 1139, 1158 (D. Ariz. 2017)). But the same is not necessarily true in the context of consumer goods, particularly food. *See, e.g.*, *Sebastian v. Kimberly-Clark Corp.*, No. 17 Civ. 442, 2017 WL 6497675, at *5 (S.D. Cal. Dec. 18, 2017) ("[T]he statements 'simple formula' and 'gentle' are not mere puffery in the context of this litigation about alleged misrepresentations regarding the ingredients in baby wipes."). On the list of "undesired ingredients," moreover, Hu argues that a reasonable consumer would not interpret the list "as a promise that other, unidentified things (i.e., lead) are also not in the product." Def. Mem. at 21 (emphasis omitted). But the list at least implies that Hu is concerned with—and diligent about—removing unwanted ingredients and contaminants from the Products. *George*, which Hu cites, is not to the contrary: there, the Second Circuit found that statements about how "Starbucks sources its products and crafts its coffee and the ingredients it uses" "were plausibly specific enough to be more than puffery." 857 F. App'x at 706. The Circuit rejected the plaintiff's argument that these statements about Starbucks products "communicate anything about the use of pesticide in Starbucks's *stores*." *Id.* (emphasis added). Here, by contrast, Hu's alleged misrepresentations concern the Products themselves, so no interpretive leap is required.

In all, the Court finds that Levy has plausibly alleged violations of New York General Business Law §§ 349 and 350, both by omission and misrepresentation. Hu's motion to dismiss these claims is, therefore, DENIED.

### C. Breach of Express Warranty

Similarly, the Court finds that Levy has stated a claim for breach of express warranty. Levy alleges that Hu breached its "numerous representations that their products are 'better-for-you,' 'clean,' 'organic,' and made with 'simple, close to nature ingredients,'" which amount to express warranties of "purity and quality control."[7] PAC ¶ 92. Hu does not challenge this claim specifically, but relies on its general arguments that a reasonable consumer would not be misled by its representations. "However, as the Court is unable to determine as a matter of law that the statements are not misleading under [the General Business Law], it is equally inappropriate to determine they are not misleading for the warranty claim. *Goldemberg,* 8 F. Supp. 3d at 483. Accordingly, Hu's motion to dismiss the warranty claim is likewise DENIED.

### D. Fraud and Unjust Enrichment

The PAC adds a claim for fraud that was not present in the first amended complaint, PAC ¶¶ 120–26, so Hu's motion to dismiss does not address it. The Court declines to assess in the first instance whether Hu has stated a claim for fraud. Hu may request leave to file a renewed motion to dismiss addressing only the fraud claim.

In addition to adding a fraud claim, the PAC omits the unjust enrichment claim present in previous versions of the complaint. Because Levy has abandoned the claim, Hu's motion to dismiss the unjust enrichment claim is DENIED as moot.

### E. Tolling

Hu also takes issue with the complaint's statement that "[a]ny applicable statute of limitations has been tolled by the 'delayed discovery' rule," because Levy "did not know (and had no way of knowing) that the Products contained toxic heavy metals." Def. Mem. at 24; PAC ¶ 74. It is true that

---

[7] As with Levy's General Business Law misrepresentation claim, the Court examines only those warranties made on the Products' packaging.

14

Levy has not, at this point, established a basis for equitable tolling. But, Hu also has not identified an applicable statute of limitations that would justify dismissal of this action. The Court, therefore, finds it unnecessary at this juncture to determine whether any of Levy's claims are time-barred.

IV.     Primary Jurisdiction

Hu requests that the Court stay the proceedings in deference to the FDA's "primary jurisdiction" over issues involving "food safety and toxicity," if it does not dismiss the complaint. Def. Mem. at 23–24. The primary jurisdiction doctrine aims to "allocate initial decisionmaking responsibility between courts and agencies and to ensure that they do not work at cross-purposes." *Ellis v. Trib. Television Co.*, 443 F.3d 71, 81 (2d Cir. 2006) (quotation marks and citation omitted). A court considering whether to stay a case in deference to an agency considers factors including:

> (1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made.

*Id.* at 82–83. As the Circuit has emphasized, the primary jurisdiction is a "relatively narrow" exception to federal courts' "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Palmer v. Amazon.com, Inc.*, 51 F.4th 491, 505 (2d Cir. 2022) (cleaned up).

The Court finds that the *Ellis* factors, on balance, do not favor a stay. As to the first factor, the central question in this case is whether Hu has misled the reasonable consumer about the lead content of the Products—an inquiry "to which courts are eminently well suited, even well versed." *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413, 2013 WL 4647512, at *8 (E.D.N.Y. Aug. 29, 2013). Although the parties will likely litigate what amount of lead is safe to consume, "this case is far less about science than it is about whether a label is misleading." *Goldemberg*, 8 F. Supp. 3d at 476 (quotation marks and citation omitted). As to the second factor, however, it is "within the FDA's

15

discretion to determine whether a label is misleading" and to "ensur[e] product safety." *Id.* at 477 (citation omitted); *see* 21 U.S.C. § 343(a).

On the third factor, Hu argues that there is a substantial danger of inconsistent rulings "given the raft of lawsuits filed in the wake of the Consumer Reports article." Def. Mem. at 24. Perhaps so—although Hu likely overstates the danger, as lawsuits against other manufacturers named in the article will require individualized assessments of the packaging and marketing of their products. And, as to the fourth factor, Hu does not argue that a prior application has been made to the FDA regarding lead in chocolate—instead, it cites an ongoing FDA assessment of heavy metals in baby food and their impact on "babies and young children." Def. Mem. at 23–24; *see* ECF No. 35-10. Even if that assessment were relevant here, the Circuit has found that "deferring to the FDA would unnecessarily prolong" cases involving heavy metals, "likely for upwards of several years." *White v. Beech-Nut Nutrition Co.*, No. 23-220, 2024 WL 194699, at *2 (2d Cir. Jan. 18, 2024); *see also id.* (vacating district court's decision to dismiss a case against a baby food manufacturer under the primary jurisdiction doctrine).

Hu's request to stay the case is, therefore, DENIED.

V.     Sealing Request

The Court has also reviewed the parties' requests to redact portions of the Second Amended Complaint and to seal certain exhibits. ECF Nos. 52, 56. Although there is a common law presumptive right of access to judicial documents, *United States v. Erie Cnty.*, 763 F.3d 235, 239 (2d Cir. 2014), the Court is entitled to weigh the value of access to those documents against the impact of disclosure on, among other ends, the privacy interests of the parties. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006). "When litigation requires disclosure of trade secrets, the court may disclose certain materials only to the attorneys involved." *In re N.Y. Times Co.*, 577 F.3d 401, 410 n.4 (2d Cir. 2009).

Here, the Court finds that Hu's proposed redactions and sealings relate to its proprietary marketing strategies and business development activities, the disclosure of which could cause Hu competitive harm. *Tropical Sails Corp. v. Yext, Inc.*, No. 14 Civ. 7582, 2016 WL 1451548, at *4 (S.D.N.Y. Apr. 12, 2016). Hu's request to seal Exhibits B, C, D, E, F, G, H, I, J, K, L, M, and O, as well as their request to redact portions of Exhibit P and the Second Amended Complaint, is GRANTED.

## CONCLUSION

For these reasons, Hu's motion to dismiss the complaint or stay the proceedings is DENIED. Levy's motion to file a second amended complaint is GRANTED, and Hu's motion to redact and seal materials associated with that complaint is likewise GRANTED. Levy shall confer with Hu and file a redacted version of the Second Amended Complaint with exhibits on the public docket by **March 15, 2024**. Should Hu seek to file a motion to dismiss with respect to the fraud claim, it shall file a pre-motion letter by **March 22, 2024.**

The Clerk of Court is directed to terminate the motions at ECF Nos. 42 and 51–53.

SO ORDERED.

Dated: March 1, 2024
New York, New York

_____
ANALISA TORRES
United States District Judge